**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CAMERON LEWIS** | * | **CIVIL ACTION NO. 2:26-cv-01001** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE SUSIE MORGAN** |
| **THE ADMINISTRATORS OF THE** | * | |
| **TULANE EDUCATIONAL FUND** | * | **MAGISTRATE JUDGE** |
| | * | **KAREN WELLS ROBY** |
| | * | |
| | * | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR PROTECTIVE ORDER**

*Pro se* Plaintiff is a current student at Tulane University. She has a history of filing frivolous *pro se* lawsuits against Defendant, the Administrators of the Tulane Educational Fund d/b/a Tulane University ("Tulane") and using those lawsuits to try to elicit improper discovery directly from and otherwise harass and bully Tulane employees and administrators. She has already been admonished by one federal judge this year and instructed to cease her conduct. Since then, Plaintiff filed this new *pro se* lawsuit against Tulane and has continued her improper conduct. Tulane and undersigned counsel have tried to amicably resolve these communication issues with Plaintiff for months—to no avail—and Plaintiff's behavior has recently escalated in frequency and severity. Therefore, Tulane now moves for a protective order requiring Plaintiff to (1) cease all harassing and inappropriate communications to Tulane employees and administrators; and (2) direct all communications intended for Tulane employees and administrators to undersigned counsel for appropriate handling with the exception that Plaintiff may direct (a) communications about current classes and coursework to her Tulane employees responsible for class scheduling, professors and/or teaching assistants and (b) communications about current student support services to her

#6080588v1

assigned support persons, Dean Erica Woodley and/or Mr. Kyle Pearson[1]—all for the reasons herein.

## FACTUAL AND PROCEDURAL BACKGROUND

This is not the first time that Plaintiff has displayed this inappropriate behavior, and Tulane has been forced to seek judicial intervention. Given Plaintiff's history, Tulane will briefly explain Plaintiff's prior inappropriate conduct.

### A.    Plaintiff's First Disability Lawsuit in EDLA.

On ▮▮▮▮▮▮▮ Plaintiff filed a pro se lawsuit captioned "▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in U.S. District Court for the Eastern District of Louisiana ("First Disability Lawsuit").[2] In her 756-page operative complaint, she sued ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮[3] These are the same alleged medical claims, disabilities, and claims as in this present lawsuit.

After Plaintiff filed her First Disability Lawsuit, she tried to engage Tulane and its defendant-employees about claims and issues raised in her lawsuit. On August 21, 2025, undersigned counsel sent an introductory email to Plaintiff requesting that all litigation-related

---

[1] If Plaintiff cannot determine which communications appropriate fall within this exception, then Plaintiff should direct all communications to Tulane Counsel for appropriate handling.

[2] Out of an abundance of caution, Tulane will seal identifying information about other lawsuits where Plaintiff asked to proceed anonymously.

[3] ▮▮▮▮▮▮▮▮▮ Rec. Doc. 10.

inquiries be directed to undersigned counsel.[4]  Plaintiff refused and continued to direct litigation-related demands and questions directly to Tulane's employee defendants, including serving interrogatory-type questions about her alleged disability and Tulane's accommodation process directly on the defendant-employees.[5]  When Tulane employees asked Plaintiff to re-direct those communications to undersigned counsel, Plaintiff weaponized her status as a current student and tried to force the defendant-employees to respond by characterizing her incessant inquiries as "education-related" and/or in her capacity as a student. [6]  Plaintiff claimed "retaliation" whenever a Tulane employee did not give her the exact answer she wanted when she wanted it.  Given Plaintiff's status as a pro se litigant and student, Tulane and undersigned counsel spent hundreds of hours trying to explain appropriate boundaries and engaging with Plaintiff on all issues not related to her litigation (while repeatedly asking Plaintiff to direct litigation-related inquiries to undersigned counsel).[7]

Plaintiff's inappropriate behavior in the First Disability Lawsuit continued until Tulane was forced to seek judicial relief.  For example, on or around February 28, 2026, Plaintiff ordered undersigned counsel not to contact her except to serve pleadings, told the employees she would not communicate with undersigned counsel, bombarded those same employees with a multitude of emails containing litigation questions and accusing them of illegal conduct, set a Zoom meeting with one employee in which she again asked litigation-related questions, and requested that Tulane issue a No-Contact Order (the equivalent of a TRO) against undersigned counsel.[8]  Plaintiff also threatened undersigned counsel with baseless disciplinary sanctions after counsel accurately

---

[4] *See* Exhibit A, Tulane's Motion for Status Conference in First Disability Lawsuit with attached August 21, 2025 email at p. 5 of PDF filing.
[5] *Id*. at p. 6-18 of PDF filing.
[6] *Id*. at p. 2, 6-18 of PDF filing.
[7] *Id*. at p. 2-3 of PDF filing.
[8] *Id*. at p. 2-3, 16-18 of PDF filing.

#6080588v1

referenced Plaintiff's arrest in a pleading (which was supported by a NOPD report).[9]  The tone (accusatory, threatening and/or harassing), timing (late night), and volume (constant) of Plaintiff's communications for months was obviously inappropriate.  Tulane therefore filed a motion before Magistrate Judge North for relief.[10]

### B.    Magistrate Judge North Orders Plaintiff to Stop and to Direct Communications to Tulane Counsel.

On March 24, 2026, the parties appeared for status conference before Magistrate Judge North.  Magistrate Judge North admonished Plaintiff against her improper and harassing communications and ordered that Plaintiff direct <u>all</u> communications to undersigned counsel except those limited communications related to routine and current student issues like scheduling classes.[11]  Plaintiff complied with this order for less than a day.

When reminded by undersigned counsel of the status conference, Plaintiff claimed ignorance:

> I don't recall anything you said on the conference. There was no audio recording, and I have disability accommodations for this. While I understood the judge directed me to communicate through you— and while I am positive he never indicated that he found or interpreted anything from my alleged "behavior" (certainly not anything regarding harassment or inappropriateness as you've tried to assert)— I have no interest in anything you have to say, so I never heard whatever it was you briefly said.[12]

When warned that Tulane would go back to the Court to seek relief, Plaintiff dismissed her First Disability Lawsuit without prejudice[13] and continued her harassing and inappropriate communications.  Undersigned Counsel and Tulane employees directed Plaintiff to continue to send communications to Counsel as Counsel would continue to represent Tulane in any claims

---

[9] *Id*. at p. 3 of PDF filing.
[10] *Id*.
[11] ███████████████, Rec. Doc. 56.
[12] *See* E-Mail Chain dated March 24, 2026, attached as Exhibit B.
[13] ███████████████, Rec. Doc. 57.

4

#6080588v1

Plaintiff may re-file or file,[14] and Plaintiff refused: "There is no lawsuit since it has been dismissed. There are no orders by the court or any judge. Therefore, your directive does not apply."[15]

### C. Plaintiff Files More Pro Se Lawsuits / Claims and Continues her Harassment of Employees.

While continuing her harassing communications to Tulane employees, Plaintiff filed several additional *pro se* lawsuits against Tulane, including this present lawsuit *again* alleging that Tulane discriminated against her on the basis of disability (Post-Traumatic Stress Disorder, Major Depressive Disorder, Generalized Anxiety, Agoraphobia), deprived her of reasonable accommodations for her disability, and breached a contract with her as a result.[16] Although Plaintiff has continually been instructed to direct communications to undersigned counsel, Plaintiff has refused.[17] She recently sent inappropriate communications to Tulane employees about her claims, including a series of AI-generated cartoons clearly with messages like "I heard a scary movie is now showing at your institution, so I drew a pretty picture of you. I was hoping to get it autographed"— which are clearly intended to intimidate and/or harass Tulane's President and administrators:

---

[14] *See* E-Mail Chain dated March 27, 2026, attached as Exhibit C.
[15] *See* E-Mail Chain dated March 24, 2026, attached as Exhibit D.
[16] Plaintiff has recently filed an anonymous pro se lawsuit in Civil District Court for the Parish of Orleans, ▮▮▮▮ ▮▮▮▮ alleging a variety or tort and breach of contract claims against Tulane. Plaintiff's CDC lawsuit is based on false representations of fact and Tulane expects that lawsuit to be dismissed.
[17] See Exhibits A, C, D and Sample E-Mails attached as Exhibit E.

#6080588v1





#6080588v1



*See* Sample E-Mails from Plaintiff with Cartoons, attached as Exhibit F.  Plaintiff also tried to lodge complaints against Tulane via email with various administrative agencies—until the U.S. Office of Civil Rights told her to stop emailing them and Plaintiff turned to demanding that Tulane administrators email her messages to the Office of Civil Rights or OCR instead.[18]

Plaintiff has continually refused to direct communications to undersigned counsel and has continued to direct harassing, inappropriate, and/or legal related communications to Tulane administrators and employees. Most recently, Plaintiff has demanded Tulane administrators – particularly Jessica Machado the Director of Tulane's Goldman Center for Accessibility and a key figure in Plaintiff's present disability and accommodation lawsuit – answer questions directly related to her present lawsuit (i.e., her alleged disability, Tulane's disability and accommodation process and

---

[18] *See* Sample E-Mails re: OCR, attached as Exhibit G.

7

policies) and seeking privileged information between Tulane and undersigned counsel (i.e., When I am directed to communicate with outside litigation counsel, what role, if any, does counsel have in the administration of my accommodation requests? For example, is counsel serving solely as a communications intermediary, or does counsel have any role in evaluating, directing, approving, or deciding accommodation matters? Are you declining to answer my accommodation-related questions (for example, regarding the electronic disposition of the "completed" disability accommodation request) because you lack authority to do so, or because the University has instructed that such communications be handled through outside litigation counsel?).[19]

Plaintiff has blatantly refused Tulane employees' requests that she re-direct certain communications to Tulane Counsel, told Tulane employees they must answer her, and taken to incessantly sending them the verbatim same demands over and over again.[20] Plaintiff has also taken to sending the same incessant demands to Tulane's President, Provost, Board of Trustees, Dean of Students, Office of Student Conduct, Director of Title IX, Human Resources employees, Case Management and Victim Support Services employees, and Goldman Center for Accessibility employees.[21] Tulane has attached a mere sample of emails as exhibits to this motion, but can provide more if the Court so desires.

### D.    Plaintiff Has Refused to Appropriately Communicate with Counsel.

Plaintiff also refuses to engage appropriately with Tulane Counsel. For example, Tulane Counsel asked for her availability and phone number to meet and confer on these issues, and Plaintiff refused to provide either.[22] Plaintiff has also falsely claimed she has her own attorney – seemingly to try to get around Tulane Counsel and Tulane administrator's directives that she must send certain

---

[19] *See* Sample E-Mails, attached as Exhibit H.
[20] See Exhibits A-H.
[21] *See* Exhibit F, H and Sample E-Mails, attached as Exhibit I.
[22] *See* E-Mail Chain dated August 10, 2026, attached as Exhibit J.

#6080588v1

inquiries to Tulane Counsel.  For example, when the Dean of Students directed her to communicate about specific issues with Tulane Counsel, Plaintiff responded: "I am unable to communicate with Amy McIntire because under the ABA model, she is prohibited from contacting me since I am paying for LegalShield."[23]  When the Dean of Students asked Plaintiff to have her LegalShield (a subscription-based legal service) attorney contact Tulane Counsel, Plaintiff responded "Unfortunately, I cannot do that. The subscription service does not include correspondence, litigation, hearings, etc.— it can only do essentially a notary service for documents like a prenuptial, demand letters, etc. and is very limited."[24]

Nevertheless, Plaintiff has continued to present the façade of having an attorney to avoid having to appropriately communicate with Tulane Counsel.  For example, just this week, she refused to speak with Tulane Counsel about several topics on the basis of alleged representation.[25]  Plaintiff provided Tulane Counsel with a series of 1-800 and other generic telephone numbers which she claimed belonged to her attorney.[26]  Tulane Counsel called each number.  On one number, a security guard answered and said there were no lawyers in his building and that he had never heard of Plaintiff or her alleged attorney.[27]  On another line, an automated message service came on until Tulane Counsel was able to find a person who informed Counsel that the number was a customer sales line and that she had never heard of Plaintiff or her alleged attorney.[28]  All the while, Plaintiff continues to send inappropriate communications to Tulane employees, refuse their requests to re-direct certain inquiries to Tulane Counsel under the guise of ABA ethics rules, and incessantly repeats the same requests to Tulane employees who have already referred her to Tulane Counsel for responses.[29]

---

[23] *See* E-Mail Chain dated April 8, 2026, attached as Exhibit K.
[24] *Id*.
[25] *See* Exhibit J, at p. 1-5.
[26] *Id.* p. 1-3.
[27] *Id.* at p. 2.
[28] *Id.* at p. 1-2.
[29] *See* Exhibits A-K.

9

Tulane is now forced to file this motion.

## LAW AND ANALYSIS

### I.       Legal Standard.

Federal Rules of Civil Procedure Rule 26(c) confers broad authority and discretion to the trial judge to determine when and to what degree to which a protective order is warranted. Fed. R. Civ. P. 26(c). *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984) ("the unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders"). *In re Leblanc*, 559 Fed. Appx. 389, 392-93 (5th Cir. 2014). Rule 26(c) further provides that "the court may for good cause, issue and order to protect a party or person from annoyance embarrassment, oppression or undue burden or expense. Fed. R. Civ. P. 26(c).  On the merits and scope of the protective order, the burden is upon the movant to show the necessity of a protective order. *In re Terra*, 134 F.3d 302, 306 (5th Cir. 1988).

### II.       Pro Se Status is No Shield Against Inappropriate and Harassing Communications.

A *pro se* "[p]laintiff, acting as [her] own lawyer, must maintain the professionalism, courtesy, and dignity required of any member of the [bar]." *Eustice v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll*., No. CV 18-1008-SDD-RLB, 2020 WL 3520298, at *8 (M.D. La. June 29, 2020), report and recommendation adopted, No. CV 18-1008-SDD-RLB, 2020 WL 3966320 (M.D. La. July 13, 2020).  "[A] *pro se* litigant is not 'exempt ... from compliance with the relevant rules of procedural and substantive law.' *NCO Financial Systems, Inc. v. Harper–Horsley*, No.07–4247, 2008 WL 2277843 at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *Id.* (citing *Birl*, 660 F.2d at 593). As the Fifth Circuit has held, "[t]hat [certain] filings are *pro se* offers [a *pro se* plaintiff] no

10

impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

As set forth in the factual and procedural background, Plaintiff has abused the *pro se* process and continues to send harassing and inappropriate emails to employees of Tulane that have nothing to do with her status as a current student and which relate to issues raised in her ongoing and threatened lawsuit(s) and claim(s).  When Tulane employees have re-directed her to Tulane Counsel, Plaintiff has refused.  The Louisiana Rule of Professional Conduct 4.2 prohibits communication about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter. While this rule is directed to licensed attorneys, the underlying principle – that a party's communications must be channeled through counsel – is reflected in and enforced through procedural rules that bind all litigants. "The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law" and "such a litigant acquiesces in and subjects himself to the established rules of practice and procedure." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981).

Given Plaintiff's pattern of inappropriate and harassing communications, Tulane requests that Plaintiff be ordered to direct nearly all communications intended for Tulane employees to Tulane Counsel for appropriate handling.  This exact relief has been granted in nearly identical situations.  In *Eustice v. LSU,* a pro se plaintiff student at LSU who sued LSU for various federal and state law claims, including violations of due process, discrimination laws and Title IX., was prohibited from contacting LSU employees from the beginning of the lawsuit. *Eustice v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 18-1008-SDD-RLB, 2020 WL 3520298, at *2 (M.D. La. June 29, 2020), *report and*

#6080588v1

*recommendation adopted,* No. CV 18-1008-SDD-RLB, 2020 WL 3966320 (M.D. La. July 13, 2020). At the beginning of the lawsuit, the U.S. District Court of the Middle District of Louisiana required that any contact between the pro se Plaintiff and LSU be done through defense counsel to halt plaintiff's direct communication with LSU faculty members and administrators:

> To halt Plaintiff's direct communication with LSU faculty members and administrators, the Court provided that it was reasonable to require "any contact between Plaintiff and LSU be done through defense counsel." (R. Doc. 88 at 3). The Court further provided that "should Plaintiff need any additional information from the school, that request shall be made in writing to defense counsel. Defense counsel shall make reasonable efforts to address those requests with his client and facilitate the transfer of any records or documents as appropriate." (R. Doc. 88 at 3). *Id.*

The same relief is warranted here. *See also Lewis v. S. S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) ("[T]he power of courts to enjoin harassment or repeated invasions of privacy is recognized." (internal citations omitted).

### III.   Tulane requests that Plaintiff be ordered to direct nearly all communications intended for Tulane employees to Tulane Counsel for appropriate handling.

It is clear that Plaintiff either cannot or willfully refuses to understand the types of communications she may appropriately send to Tulane and its employees.  It is further clear that Plaintiff refuses to comply with repeated directives from Magistrate Judge North, Tulane employees, and undersigned counsel to direct communications to Tulane Counsel.  Therefore, Tulane now moves for a protective order requiring Plaintiff to (1) cease all harassing and inappropriate communications to Tulane employees and administrators; and (2) direct all communications intended for Tulane employees and administrators to undersigned counsel for appropriate handling with the exception that Plaintiff may direct (a) communications about current classes and coursework to her Tulane employees responsible for class scheduling, professors and/or teaching assistants and (b) communications about current student support services to her assigned support persons, Dean Erica Woodley and/or Mr. Kyle Pearson.  This is consistent with what Magistrate

Judge North previously ordered.   If Plaintiff cannot determine whether communications appropriately fall within the exceptions 2(a) and (b) (as Tulane and undersigned counsel strongly fear will be the case), then Tulane asks that the Court order Plaintiff to direct all communications intended for Tulane employees and administrators to undersigned counsel for appropriate handling.

Given Plaintiff's propensity to send an overwhelming amount of emails in a single day—sometimes a constant flow of emails in a single hour—undersigned counsel requests that Plaintiff be limited to sending no more than one email per day to undersigned counsel, with that email to contain all communications and questions that Plaintiff wishes to raise.  Undersigned Counsel will either respond as appropriate or route the communication to the appropriate employee for response (if it is indeed a communication appropriate for response directly by an employee).  This is not a form of retaliation as Plaintiff has and will claim.  Rather, for over a year, Plaintiff has abused the pro se system and weaponized her status as a current student and pro se litigant to send harassing, inappropriate, and legal-related communications to represented parties.  The requested order merely asks her to behave as any litigant, represented or pro se, must.  Given Plaintiff's propensity to "not remember" instructions such as Magistrate Judge North's prior directive, Tulane respectfully requests that any protective order detail all of the above.

## CONCLUSION

For the foregoing reasons, Tulane respectfully requests a protective order requiring Plaintiff to (1) cease all harassing and inappropriate communications to Tulane employees and administrators; and (2) direct all communications intended for Tulane employees and administrators to undersigned counsel for appropriate handling with the exception that Plaintiff may direct (a) communications about current classes and coursework to her Tulane employees responsible for class scheduling,

13

#6080588v1

professors and/or teaching assistants and (b) communications about current student support services to her assigned support persons, Dean Erica Woodley and/or Mr. Kyle Pearson. If Plaintiff cannot determine whether communications appropriately fall within the exceptions 2(a) and (b), then Plaintiff should direct <u>all</u> communications intended for Tulane employees and administrators to undersigned counsel for appropriate handling. Finally, Plaintiff should be limited to sending one email per day to undersigned counsel, with that email to contain all communications and questions that Plaintiff wishes to raise.

Respectfully submitted,

*/s/ Amy L. McIntire*
Amy L. McIntire, Bar No. 35241
Valerie M. Andrews, Bar No. 39466
of
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000
Telefax:     (504) 544-6054
Email:  mcintire@chaffe.com
          valerie.andrews@chaffe.com
***ATTORNEYS FOR DEFENDANT***

## CERTIFICATE OF COMPLIANCE

I certify that I have conferred in good faith with Plaintiff for months on these issues as documents in Exhibits A-K and have attempted to confer in good faith with Plaintiff via phone as documented in Exhibit L.  Plaintiff has refused to respect written directives and has refused to provide her phone number to undersigned counsel.

*/s/ Amy L. McIntire*

14

#6080588v1