**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CAMERON LEWIS** | **CASE NO. 2:26-cv-01001** |
| *Plaintiff,* | **SECTION "E" (4)** |
| **VERSUS** | **JUDGE: SUSIE MORGAN** |
| **ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND** | **MAG. JUDGE: KAREN WELLS ROBY** |
| *Defendant.* | *JURY TRIAL DEMANDED* |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**NOW INTO COURT**, appearing *pro se*, Plaintiff Cameron Lewis respectfully submits this Memorandum in Opposition to Defendant's Motion for Protective Order (Rec. Doc. 15). Defendant seeks an order that would require a currently enrolled student to route broad categories of future communications through the University's outside litigation counsel, including communications involving ongoing University processes that continue to operate independently of this litigation. Defendant has not demonstrated that such extraordinary relief is authorized under Rule 26(c) or otherwise justified under the circumstances presented here. Plaintiff respectfully requests that the Court deny Defendant's motion. In the alternative, should the Court determine that some limitation on future communications is appropriate, Plaintiff respectfully requests that the Court adopt the narrower communication protocol proposed herein.

**PRELIMINARY STATEMENT**

Defendant asks the Court to use Federal Rule of Civil Procedure 26(c), a rule governing discovery, to impose a sweeping injunction over nearly every communication Plaintiff may have with Tulane while she remains a current disabled student. Defendant seeks not merely to regulate

discovery, but to regulate Plaintiff's access to multiple university processes that continue to operate independently of this litigation. The requested order would make Defendant's litigation counsel the gatekeeper for disability services, equal-opportunity processes, Title IX, student conduct, case management, administrative complaints, records, and other ongoing student matters. It would also subject Plaintiff to contempt based on undefined terms such as "harassing," "inappropriate," and "legal-related." Rule 26(c) does not support that relief, and Defendant has not made the particularized showing required for it.

Defendant's motion seeks for its outside litigation counsel to become the mandatory intermediary between a current student and the university offices responsible for disability accommodations, Equal Opportunity, Title IX, victim services, case management, student conduct, and student records. Defendant's motion also rests on a materially inaccurate description of a prior proceeding. Defendant repeatedly states that Magistrate Judge Michael B. North entered an order directing Plaintiff to cease purported harassment and route communications through counsel. The docket in that prior action contains no written protective order entered by Judge North setting out such terms. Defendant attaches no such order and no transcript. At most, the record reflects a disputed recollection of comments or directions during a status conference. Plaintiff does not concede that any oral direction had the content, breadth, contempt effect, or post-dismissal duration Defendant now attributes to it.

Plaintiff recognizes that litigation discovery should proceed through the Federal Rules and that reasonable, clear communication boundaries can benefit everyone. But the proposed remedy is not a discovery order and is not reasonably tailored. The motion should be denied. Alternatively, the Court should require the parties to develop a specific protocol that channels actual litigation

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

communications through counsel while preserving Plaintiff's direct, written access to the University offices responsible for her current student services.

## RELEVANT BACKGROUND

Plaintiff is a current Tulane student and proceeds without counsel. Her claims concern disability accommodations and related University processes. Because Plaintiff remains enrolled, she necessarily has ongoing non-litigation reasons to communicate with academic and administrative offices. The same subject may have both a present student-services component and a litigation component. That overlap does not convert every question about an accommodation request, student record, complaint, or support service into improper discovery.

Defendant also opens its motion by asserting that Plaintiff has "a history of filing frivolous pro se lawsuits." Rec. Doc. 15-3 at 1. That assertion is not a finding of any court and materially misstates the procedural record. No court has adjudicated any of Plaintiff's prior lawsuits frivolous or imposed sanctions on that ground. The prior dismissal without prejudice cited by Defendant was not an adjudication on the merits and did not convert the dismissed claims into frivolous claims. See Fed. R. Civ. P. 41(a)(1)(B). Nor does the number of actions filed establish frivolousness. Counsel's repeated use of that prejudicial label is unsupported advocacy, not evidence, and should be disregarded.

Defendant relies heavily on the number, tone, and recipients of Plaintiff's emails. Plaintiff disputes Defendant's characterization of her communications and her use of existing university processes, including that her student status was "weaponized." Ref. Doc. 15-3 at 3. Some communications followed unanswered or incompletely answered requests involving current institutional processes. Plaintiff's protest artwork criticized those processes. The artwork contains no statement that Plaintiff intends to inflict physical harm, no demand backed by threatened harm,

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

and no instruction that a recipient act to avoid injury. Calling critical or unsettling artwork a "threat" does not make it one. Nevertheless, Plaintiff is willing, as a prospective measure and without admitting wrongdoing, not to send graphic protest artwork directly to individually named University employees while this action is pending.

The actual motion is also internally inconsistent. It states that Plaintiff should be "limited to sending more than one email per day" to counsel. Rec. Doc. 15-3 at 2 (emphasis added). Defendant's memorandum instead requests no more than one email per day. Rec. Doc. 15-5 at 13-14. The operative request therefore does not even state a coherent numerical limit. More fundamentally, neither version identifies exceptions for emergencies, imminent academic or administrative deadlines, separate active matters, or counsel's failure to acknowledge or route communication.

## LAW AND ARGUMENT

### I.   RULE 26(c) DOES NOT AUTHORIZE THE BROAD NON-DISCOVERY INJUNCTION DEFENDANT SEEKS

Rule 26(c) permits a party or person "from whom discovery is sought" to seek protection from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). Its enumerated remedies regulate disclosure, discovery, depositions, and confidential discovery material. *Id*. 26(c)(1)(A)-(H). The Supreme Court's recognition of broad discretion under Rule 26(c) rests on "the unique character of the discovery process." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). Defendant does not ask the Court merely to forbid informal interrogatories or require discovery requests to comply with Rules 30 through 36. It asks the Court to regulate Plaintiff's future communications as a student, including communications that are

4

neither disclosure nor discovery. Defendant cites no authority authorizing a federal court to require a current university student to route all future communications regarding disability accommodations, case management, victim support services, Title IX, equal opportunity, student conduct, and student records through the university's outside litigation counsel. Defendant also cites no Fifth Circuit authority holding that Rule 26(c), standing alone, authorizes such a comprehensive student-contact injunction. The Court may manage discovery without transferring control of Plaintiff's access to university services to adverse litigation counsel.

## II.    DEFENDANT HAS NOT SHOWN GOOD CAUSE WITH PARTICULAR AND SPECIFIC FACTS

The movant bears the burden to establish the necessity of a protective order through "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). Defendant's memorandum repeatedly uses labels such as "harassing," "inappropriate," "incessant," and "threatening," but those labels cannot substitute for a communication-by-communication showing of why prospective relief is necessary and why narrower measures would be inadequate. Defendant's unsupported "frivolous lawsuits" label is another instance of conclusion substituting for evidence; Defendant cites no judgment, order, or sanctions ruling that supports it.

The memorandum identifies no declaration from any employee stating that Plaintiff threatened physical harm. It does not distinguish unanswered student-services inquiries from repeated demands after a complete response. It does not quantify the communications by subject, office, or time period in a way that would justify treating every future communication alike. And it does not explain why ordinary tools - a designated contact, subject-line protocol, reasonable

5

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

response window, or restriction limited to actual discovery - would be insufficient. The requested order is therefore disproportionate to the showing made.

## III.    MAKING ADVERSE LITIGATION COUNSEL THE GATEKEEPER WOULD IMPAIR ONGOING STUDENT ACCESS

Plaintiff remains a currently enrolled student who currently participates in multiple university-administered processes. Plaintiff has an ongoing need to communicate with personnel in the Goldman Center for Student Accessibility, Victim Services, Case Management, Student Conduct, Title IX, Equal Opportunity, academic offices, student records personnel, instructors, and other support services. These offices have institutional roles independent of outside litigation counsel. Plaintiff's own student records and routine administrative communications do not cease to be student-facing university functions merely because they overlap with issues or subjects that may be perceived as also being relevant to litigation.

### A. The proposed order would interfere with the ADA interactive process.

Plaintiff is a current student. As a disabled student, Plaintiff needs a functional written channel that creates a reliable record and allows her to process and respond to information. Defendant's proposal does not require counsel to acknowledge receipt, forward a request by a fixed time, preserve administrative deadlines, or refrain from participating in substantive student decisions. It instead gives adverse counsel unilateral control over whether a student communication is routed or answered. That structure creates avoidable delay, confusion, and risk of prejudice.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff has pending disability accommodation matters and has an assigned Disability Resource Professional. Questions concerning accommodation requests remain unresolved. Defendant's proposed order would require accommodation-related communications to be routed through outside litigation counsel. The interactive process is intended to be a collaborative process between the institution and the student. Nothing in Defendant's proposed order guarantees that accommodation requests will continue to be administered by the university personnel designated to conduct the interactive process. The proposed order contains no deadlines, no acknowledgement requirement, and no assurance that accommodation requests will be routed to the appropriate university office.

**B. The proposed order would interfere with Plaintiff's access to Title IX and Equal Opportunity processes.**

Plaintiff remains a current student and may need to communicate with the University's Title IX and Equal Opportunity offices regarding matters wholly independent of this litigation. Those offices exist to receive reports, provide information, coordinate supportive measures, explain procedures, and respond to student concerns. Defendant's proposed order contains no exception for future reports of discrimination, retaliation, sexual misconduct, harassment, or requests for supportive measures. Instead, the proposed order would require Plaintiff to route communications through Defendant's outside litigation counsel whenever a communication might be considered "legal-related." That approach creates a substantial practical problem. Complaints of

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

discrimination, retaliation, sexual misconduct, and requests for supportive measures frequently overlap with legal rights. Under Defendant's proposed terminology, virtually any communication with the Title IX or Equal Opportunity offices could be characterized as "legal-related," effectively preventing Plaintiff from communicating directly with the very offices responsible for receiving such reports. Defendant's proposed order provides no procedure for preserving reporting rights, no forwarding requirement, no acknowledgment requirement, and no assurance that time-sensitive communications would be transmitted promptly to the appropriate university office.

Plaintiff is currently participating in an active Equal Opportunity process as a complainant. Accordingly, Plaintiff's need to communicate with the University's Equal Opportunity office is immediate and ongoing. The requested order would therefore affect an internal administrative proceeding that is presently active and in which Plaintiff is currently participating. Defendant's proposed order would create uncertainty regarding Plaintiff's ability to communicate directly with the office responsible for receiving, processing, and responding to those matters. The proposed order contains no exception for ongoing or future communications concerning discrimination, retaliation, or other matters handled through the University's Equal Opportunity process.

**C. The proposed order would interfere with Case Management Victim Resources services.**

Plaintiff remains a current Tulane student and currently participates as a victim-witness in two ongoing state criminal proceedings. Accordingly, Plaintiff's need to

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

communicate with University case-management and victim-support personnel is immediate and ongoing rather than hypothetical. Defendant's proposed order contains no exception for communications concerning victim services, supportive services, safety planning, academic support, referrals, or other case-management functions. Instead, the proposed order would require Plaintiff to route communications through Defendant's outside litigation counsel whenever a communication could be characterized as "legal-related." The proposed order does not define the term "legal-related." Nor does it establish a procedure for determining whether a particular communication falls within that category.

Because victim-support services frequently overlap with criminal proceedings, safety concerns, accommodations, and institutional responses, Plaintiff cannot reasonably determine which communications would remain permissible under Defendant's proposed order. The proposed order therefore creates uncertainty regarding Plaintiff's ability to access University services that remain available to her as a current student.

### D. The proposed order creates a significant chilling effect.

Under Defendant's proposed framework, Plaintiff would be required to determine, without guidance, whether a particular communication falls within the undefined category of "legal-related" communications. This uncertainty creates a substantial risk that Plaintiff will refrain from communicating with University offices for fear that a communication could later be characterized as violating the Court's order. Many

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

university processes necessarily involve the assertion of legal rights. As a result, the distinction between a routine student-service communication and a "legal-related" communication is often unclear. A litigant cannot reasonably conform her conduct to an order that depends upon an undefined category such as "legal-related" communications. The proposed order provides no objective standard by which a student could distinguish a routine administrative communication from a prohibited "legal-related" communication. The requested relief therefore creates a significant chilling effect. A reasonable student faced with the possibility of violating a federal court order might hesitate before requesting a disability accommodation, submitting updated medical documentation, reporting discrimination or retaliation, seeking supportive measures, communicating with Equal Opportunity personnel, requesting case-management assistance, seeking victim services, or requesting access to student records. Delay or hesitation in these contexts may result in missed deadlines, delayed accommodations, delayed supportive measures, or the loss of access to ongoing university processes.

Nothing in Rule 26(c) authorizes the transfer of responsibility for these ongoing university functions from the offices designated to administer them to the university's outside litigation counsel. Moreover, Defendant's proposed order provides no safeguards to protect Plaintiff's continued access to these processes. It contains no acknowledgment requirement, no forwarding requirement, no response deadline, no

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

emergency exception, and no mechanism for ensuring that communications are promptly transmitted to the appropriate university office.

## IV.  DEFENDANTS ASSERTION THAT JUDGE NORTH ENTERED THE DESCRIBED ORDER IS MATERIALLY INACCURATE AND UNSUPPORTED

Defendant states as fact that Judge North "ordered" Plaintiff to stop improper and harassing communications and route all communications through counsel except routine student matters. Rec. Doc. 15-5 at 4. But Defendant does not produce a written order containing those terms. In fact, the docket in the prior action contains no written protective order entered by Judge North that defines prohibited conduct, identifies permitted recipients, sets a numerical limit, or states that any restriction would survive dismissal of that action. Nor does Defendant provide a transcript from which this Court could determine the precise words used during the status conference.

Plaintiff's contemporaneous email, quoted by Defendant, acknowledged her understanding that Judge North had directed certain communications through counsel during the pendency of the relevant litigation (which no longer exists), while expressly disputing counsel's assertion that the judge made a finding of harassment or inappropriate behavior. Rec. Doc. 15-5 at 4. That email is not an admission that a written protective order existed, that the judge adopted counsel's characterization, or that an indefinite restriction survived dismissal. Defendant's transformation of a disputed status-conference discussion into a formal prior adjudication is inaccurate. This Court should not treat the alleged violation of an unproduced, undefined, and non-

11

docketed order as established misconduct. If Defendant seeks enforcement of a prior court order, Defendant should produce that order.

## V.    RULE OF PROFESSIONAL CONDUCT 4.2 DOES NOT IMPOSE THE REQUESTED RESTRICTION ON PLAINTIFF

Louisiana Rule of Professional Conduct 4.2 regulates a lawyer who, "[i]n representing a client," communicates with a represented person about the matter. Plaintiff is not a lawyer representing a client. The corresponding Model Rule commentary confirms that parties to a matter may communicate directly with each other. Model Rules of Pro. Conduct r. 4.2 cmt. 4. The rule therefore does not itself command a nonlawyer pro se party to route all communications through opposing counsel. This does not mean Plaintiff may misuse direct communications as a substitute for formal discovery. It means only that Defendant must establish any proposed restriction through an applicable source of authority, concrete facts, and a tailored remedy. Rule 4.2's policy cannot supply what Rule 26(c) and the present record lack.

## VI.    *EUSTICE* IS DISTINGUISHABLE

Defendant relies on Eustice v. Louisiana Through Board of Supervisors of Louisiana State University & Agricultural & Mechanical College, No. 18-1008, 2020 WL 3520298 (M.D. La. June 29, 2020), report and recommendation adopted, 2020 WL 3966320 (M.D. La. July 13, 2020). But Eustice involved enforcement of an existing case-specific directive followed by repeated violations, sexually explicit material, communications to counsel's home, and conduct supporting dismissal and a prefiling restriction. *Id*. at *2-*8. Defendant has not shown comparable facts here. Critical artwork and persistent questions about ongoing student processes do not make the cases

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

nearly identical. Eustice also described an important safeguard omitted from Defendant's proposal: defense counsel was to make reasonable efforts to address requests and facilitate the transfer of records or documents as appropriate. *Id*. at *2. Defendant's proposal contains no acknowledgment deadline, forwarding obligation, response deadline, or protection against losing student rights while counsel decides whether a communication is "appropriate." Even on Defendant's chosen authority, its proposed order is incomplete and one-sided.

## VII.    THE PROPOSED TERMS ARE VAGUE, OVERBROAD AND INJUNCTIVE IN PRACTICE

An order enforceable by contempt must "state its terms specifically" and "describe in reasonable detail - without referring to another document - the acts restrained or required. Fed. R. Civ. P. 65(d)(1). The specificity requirement prevents uncertainty and permits meaningful appellate review. Schmidt v. Lessard, 414 U.S. 473, 476-77 (1974). An injunction that merely commands a party to obey an undefined standard is improper. *See* Meyer v. Brown & Root Constr. Co., 661 F.2d 369, 373 (5th Cir. 1981).

Defendant's proposed categories provide no usable notice. "Harassing" and "inappropriate" are undefined. The phrase "legal-related" could cover any accommodation or policy question inadvertently relevant to Plaintiff's claims. The exception for "current student support services" is limited to two named people, although University functions are performed by multiple offices. One of the individuals identified by Defendant as an appropriate point of contact is currently the subject of a pending Equal Opportunity gatekeeping matter initiated by Plaintiff related to discrimination and retaliation allegations.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

If Plaintiff is uncertain, Defendant asks that all communications be sent to its counsel, allowing ambiguity to expand the restriction. A contempt-backed order cannot depend on adverse counsel's unilateral, after-the-fact judgment of appropriateness. A litigant cannot reasonably conform her conduct to an order that depends on undefined terms such as "harassing," "inappropriate," and "legal-related."

To the extent Defendant seeks a preliminary injunction rather than a discovery-management order, it has not addressed the required elements: likelihood of success, irreparable injury, balance of harms, and public interest. See Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011). Nor has it shown why a single daily email covering every possible academic, administrative, support, and litigation issue is necessary to prevent irreparable harm.

## VIII.  INHERENT AUTHORITY DOES NOT JUSTIFY THE REQUESTED RELIEF ON THE RECORD

Courts possess inherent authority to protect the orderly administration of justice, but because of its potency that authority must be exercised with restraint and discretion and consistently with due process. Chambers v. NASCO, Inc., 501 U.S. 32, 44, 50 (1991). The Fifth Circuit ordinarily requires a specific bad-faith finding before inherent-power sanctions are imposed. Crowe v. Smith, 151 F.3d 217, 236 (5th Cir. 1998). Defendant has styled its request as a Rule 26(c) motion, not a sanctions motion, and has not established the findings necessary for a sanction-like restriction governing Plaintiff's life as a student.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

## IX.    ANY RELIEF SHOULD BE LIMITED TO A CLEAR, BALANCED COMMUNICATION PROTOCOL

If the Court concludes that prospective guidance is warranted, Plaintiff respectfully proposes that the Court direct the parties to confer on a written protocol containing, at minimum, the following safeguards:

1. Pleadings, discovery requests, settlement communications, and questions seeking litigation strategy or privileged information must proceed through CM/ECF, formal discovery, or counsel.

2. Plaintiff may communicate directly with the offices responsible for current academic matters, accessibility and accommodations, Title IX and equal opportunity, student conduct, records, billing and financial aid, case management, and student support.

3. Non-emergency communications should use one email thread per subject, and identical requests should not be resent within a reasonable response period (seven business days) unless a deadline, new fact, or emergency requires follow-up.

4. Plaintiff will not send political cartoons or other digital protest artwork directly to individually named University employees while this action is pending, without admitting that prior political artwork was threatening or improper.

5. Any matter required to pass through counsel must be acknowledged and forwarded to the responsible office within two business days, and counsel's routing process may not waive or shorten any student or administrative deadline.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

6. The protocol must preserve written communication as an accessible method and contain express exceptions for emergencies and imminent academic or administrative deadlines.

7. Any prohibited conduct must be defined objectively, and the protocol must state its duration and a process for resolving classification disputes before contempt is sought.

8. Accommodation requests and participation in the ADA interactive process shall remain the responsibility of the university office designated to administer disability accommodations.

9. Communications concerning Equal Opportunity and Title IX matters, including discrimination complaints, retaliation complaints, supportive measures, procedural questions, appeals, and ongoing administrative proceedings, shall remain the responsibility of the university offices designed to administer those processes.

10. Communications concerning case-management services, victim services, supportive measures, safety planning, referrals, and victim advocacy shall remain the responsibility of the university office designated to provide those services.

11. Requests to inspect, review, access or obtain copies of Plaintiff's educational records shall continue to be administered through the university offices responsibility for maintaining those records.

16

12. Nothing in the Court's order shall be construed to prohibit Plaintiff from communicating directly with university offices regarding ongoing student services, administrative proceedings, accommodations, supportive measures, educational records, case management, victim services, or other student matters that are administered independently of this litigation.

Such a protocol would address legitimate workload and boundary concerns without converting adverse litigation counsel into the final decision-maker for Plaintiff's education.

## **CONCLUSION**

**WHEREFORE**, Plaintiff respectfully requests that Defendant's Motion for Protective Order be denied. Alternatively, Plaintiff requests that the Court reject Defendant's proposed terms and direct the parties to develop a clear, narrowly tailored communication protocol consistent with the safeguards above. Defendant's proposed order is not a discovery-management tool. It is an attempt to place the university's outside litigation counsel between a current student and multiple ongoing university processes.


Dated: August 12, 2026

Respectfully submitted,

Cameron Lewis

Signed:

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER



**PLAINTIFF,** *PRO SE*

clewis21@tulane.edu

## CERTIFICATE OF SERVICE

I certify that on August 12, 2026, I served this filing on all counsel of record through the

Court's CM/ECF system or by another method authorized by Federal Rule of Civil Procedure 5.

Respectfully submitted,

Cameron Lewis

Signed:

**PLAINTIFF,** *PRO SE*

clewis21@tulane.edu

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
PROTECTIVE ORDER